### DOWNING *v.* MARSHALL.

### DE COURVAL *v.* RAY.

#### *Costs.—Extra allowance.*

In an equitable action for the construction of a will, an extra allowance of costs cannot be made, under the Code ;[1] but a trustee may be allowed a reasonable disbursement for counsel fees.

APPEAL from the general term of the Supreme Court, in the third district, where a judicial construction had been given to the will of Benjamin Marshall, deceased.

After the final decision of this court upon the several appeals taken by the respective parties (1 Abb. Dec. 525 ; 4 Id. 662), a question arose as to the power of the court to order an extra allowance of costs and counsel fees. The facts are fully stated in the opinion. A similar question arose in the case of *De Courval* v. *Ray,* in October 1867, in which the court adopted the opinion delivered in *Downing* v. *Marshall,* as the law of the case.

*Townsend* and *Porter,* for the appellant.

*Seymour, Reynolds* and *Bidwell,* for the respondents.

MARVIN, J.—Our attention is specially directed to the exceptions touching the extra allowances of costs and counsel fees in this case.

When the case was first in the supreme court, there

[1] See Noyes *v.* Childrens' Aid Society, 70 N. Y. 481 ; Betts *v.* Betts, 4 Abb. N. C. 317, 323, 433.

was allowed, in addition to taxable costs, to the plain-tiffs or their attorneys, $500; to James E. Marshall, $250; Benjamin Marshall and others, $250; the Bible society, $250; the *Missionary society, $250; the Tract society, $250; the Marshall infirmary, $250; [ * 381 to the attorney and guardian *ad litem* of infants, who put in an answer submitting their rights to the court, $250—in all, $2250. These sums were allowed by the judgment now under review, and additions made thus: to the attorneys of the executors, $2500; to the attor-neys of the Marshalls, $2000; to the attorney of the Marshall infirmary, $1500; to the attorney of the Bible society, $1500; to the attorney for the Missionary so-ciety, $1000; to the attorney of the Tract society, $1000 —in all, $12,250. The taxed costs of all the parties, including those in this court, amount to $2849.93, making in all, aside from the costs in this court upon the present appeal, $15,099.92. The trustees are ordered to pay these sums out of the estate, one-half from the realty, and the other from the personalty.

By the common law, costs were not awardable. They were, however, recoverable in many actions at law, as early as the 13th century. (2 Inst. 112, Statute of Marlbridge, ch. 6; Id. p. 288, Statute of Gloucester, whereof COKE says: "Before this statute, at the com-mon law, no man recovered any costs of suit, either in plea, real, personal or mixed;" 6 Vin. Ab. 321, Costs.) By a statute of the 17 Ric. II., ch. 6, it was enacted, that "forasmuch as people can be compelled to come before the King's Council, or in chancery, by writs granted upon untrue suggestions, that the Chancellor for the time being, personally, after that such sugges-tions being duly found and proved untrue, shall *have power* to ordain and allow *damages*, according to his discretion, to him which is so troubled unduly, as often is said." (Beames on Costs in Equity, 4; 4 Inst. 82, where COKE says: "This is the first parliament that

I find touching the matter;" he is treating of the court of chancery.) It is understood by Beames (*supra ;* and see 2 Bl. Com. 451, and Coke, *supra*), that the jurisdiction of the court of chancery touching costs originated in this statute. It was construed as authorizing the award of "damages" *(construed as including costs) to either party, and in any amount, *according to the discretion of the court*, and these *damages* were awarded, sometimes as a *remuneration* to the successful party, and sometimes, as a *punishment* to the unsuccessful party. In one case, for scandal in a bill, the gross sum of 100*l.* was directed to be paid; and in another, the like sum, for scandal in an answer. (Vin. Abr., Costs in Chancery, V., 6, p. 364–65.)

*382 ]

The practice of punishing a party, by ordering the payment of a gross sum, or exemplary costs, was dis continued at an early day, from the intrinsic difficulties of conviction (Beames on Costs in Equity 164); and the court, after a time, regulated the amount of costs, and for what services they should be allowed, by general orders, and thus established a fee-bill of costs, between party and party, which is adhered to, except in special cases, when the court will order the costs to be taxed as between solicitor and client.

I am not aware that parliament interfered with the discretionary power of the court over costs, except, perhaps, to a very limited extent. By a statute (4 Ann. ch. 16, § 23), it was enacted, "that, upon the plaintiff dismissing his own bill, or the defendant dismissing the same for want of prosecution, the plaintiff in such suit shall pay to the defendant or defendants, his or their full costs, to be taxed by a master." This statute, it was held, did not apply to a dismissal at the hearing; and it was usual for the plaintiff to set down his cause for hearing on bill and answer, and, on being dismissed, he would only be liable for forty shillings costs, according to an old rule of the court; and to obviate this, the

rule, by a general order, was altered by Lord Hard-wicke, in 1748, by which it is declared, that "this court may and is at liberty to direct and order such dismission to be either with forty shillings costs, or with costs to be taxed by a master, or without costs, as the court, upon the substance and merits of the case, shall think fit." (Beames on Costs 86.) Thus it is seen, that Lord Hardwicke did not regard that statute as imperative, but maintained. the discretionary power of the court as to awarding costs.

We shall hereafter find this part *of the statute of Anne in our statutes, and I may as well notice it here, as I am about to look into our legislation briefly. It is found in the act passed April 7th, 1801, to reduce certain laws concerning costs into one statute, and I think all the provisions of the act relate to actions at law, except § 16, which is taken from the statute of Anne. (Statutes H. & R., vol. 1, p. 532, § 16.) This is carried into the revised laws of 1813 (vol. 1, p. 346, § 16), in an act concerning costs, having no other relation to costs in chancery, and thence, with a modification, into the revised statutes (vol. 2, p. 613). April 8th, 1801, an act was passed, entitled " An act regulating the fees of the several officers and ministers of justice within this state," by which it was enacted, " that no officer or other person shall exact, demand or ask, or be allowed, any greater or other, fee or reward, from or in respect of any service hereafter to be done, or payment, than such as is hereinafter specified, that is to say:" This act contained fee-bills for solicitors and counsellors, and all other officers in the court of chancery. The enactment in the revised laws of 1813 is in the same words; and I am not aware, that they underwent any modification, prior to the revised statutes of 1830. By the latter statutes, the chapter relating to costs is divided into four titles. The first specified the cases in which costs may be awarded, and the first section contained

the provision from the statute of Anne, above men-
tioned, with the qualifications, not before found in our
statutes, " except in those cases where, according to the
practice of the court, costs would not be awarded
against such complainant, upon a decree rendered on
hearing the cause." Thus, either recognising the con-
struction put upon the provisions in the statute of
Anne, by Lord HARDWICKE, or abrogating the impera-
tive character of the provision, as found in our previous
acts. The next section expressly declares that the costs
of all suits and proceedings in equity shall be paid by
such party as the court shall direct. And the revisers,
in their notes, say, that this is "now declaratory of
existing law" (2 R. S. 613, §§ 81, 82, and revisers' notes).
On turning to title three of this chapter, " Of the fees
of certain *officers," it will be seen, that the
*384 ] language of the acts of 1801 and 1813 (*supra*)
is changed. It is declared, that "for the following ser-
vices," &c., "the following · fees . shall be allowed :"
Then follow the fee-bills, &c., in all the courts of record.
There is no prohibitory language here, and it is,
undoubtedly, generally imperative; and I do not sup-
pose that the court would have the power to deprive
attorneys and counsellors, in actions at law, of their
taxable costs, according to the fee-bill in the statute.
I speak of costs against the party made liable by statute
to pay. But as the provisions in the previous title had
preserved to the court of chancery its ancient discre-
tionary power as to the party who shall pay costs, the
genera᷄ language in the title cannot be construed as
imperative upon the court of chancery to award costs.

We may now proceed to the Code. By § 303, "All
statutes establishing or regulating the costs and fees of
attorneys, solicitors and counsellors, in civil actions, are
repealed. But there may be allowed to the prevailing
party, upon the judgment, certain sums by way of
indemnity, for his expenses in the action, which allow-

ances, in this act are termed costs." Then follow pro-
visions declaring when costs shall be allowed, of course,
embracing the previous actions at law, and then, by
§ 306, it is declared, that, "in other actions, costs shall
be allowed or not, in the discretion of the court." This
includes actions previously known as suits in equity,
and thus the *discretionary power* of the old court of
chancery, derived from an act of Richard II., whether
costs shall or shall not be *awarded*, and if awarded,
which party shall pay for them, is fully preserved. By
the next section (§ 307), it is declared: "When allowed,
costs shall be as follows." This takes away the discre-
tion as to the amount, and there had been no such
discretion in *this state*, before this act became a law, as
the *amount* had been regulated by the fee-bill. Then
comes the Code fee-bill. By § 308, it is provided, that
"in addition to these allowances, there shall be allowed
to the plaintiff, upon the recovery of a judgment by
him, in any action for the *partition of real
property, or for the foreclosure of a mortgage, [ * 385
or in an action in which a warrant of attachment had
been issued, or for an adjudication upon a will or other
instrument in writing, and in proceedings to compel
the determination of claims to real property, certain
per-centages, which in this case would have amounted
to $60 to the plaintiffs, and to them only. See, in con-
nection, the next section (§ 309), which also contains
another independent provision, by which, in difficult
and extraordinary cases, when a trial had been had, in
an action for the partition of real estate, and in other
actions not mentioned in § 308, "the court may, in its
discretion, make a further allowance, to any party, not
exceeding five per cent. upon the amount of the re-
covery, or claim or subject-matter involved."

This includes all the costs (law costs) provided for in
§§ 304 and 305, and not specified in § 308, in which
costs are allowed, of course, and in such cases, will be

restricted to the party entitled to costs, as the allowance is a *further* allowance. As, however, by § 306, " in other actions, costs may be allowed or not, in the discretion of the court," and as such costs, when allowed, are by the next section specified, all this class of costs, not mentioned in § 308, are included in the provision just referred to, in § 306; and I suppose that the *further* allowance may be made, in such cases, to any party to whom costs have been allowed, in the discretion of the court, under § 306. In the present case, therefore, if the action is not one of those specified in § 308, and is one of those in which, under § 306, the court may allow costs or not, in its discretion, and if such discretion justified the allowance of costs to both parties, it will follow, that the court had the *power* to make a *further* allowance of costs to any party to whom it allowed the fee-bill costs, the allowance being limited only by the five per cent. of the amount of the "subject-matter involved." (§ 309.) If the case is embraced by § 308, then none of the parties are entitled to this *further* allowance under § 309, but the plaintiffs are entitled, *absolutely*, to the *per-centage named, which in *386 ] this case will amount to $60 and no more.

In my opinion, this case is specified in § 308, and thus the discretionary power, under § 309, to make a *further* allowance, is not applicable to the case. It is an action for " an adjudication upon a will;" it was commenced to obtain the construction of the will, and directions how to proceed under the will; the difficulties were created by the will. It may, perhaps, be said, that if there had been no difficulty created by the will, still, it was a proper case for the executors to come into court for instructions. If this be conceded, what *subject-matters* would be *involved*, requiring instruction or directions? I can conceive of none extrinsic the will, except as to the property that should be resorted to, out of which to make up the deficiency to pay debts. The question

whether certain machinery in the factory-buildings
should be taken to make up the deficiency, or resort
should be had to the specific legacies, may, perhaps, be
said to be a question outside of the will, though I doubt
this, for upon construing the will, making such
machinery real estate or not, the question vanishes.
But concede, that aside from any intrinsic difficulty
in the will, it was a fair and doubtful question, whether
this machinery, or the specific legacies, should be
resorted to for the purpose of paying debts, the whole
amount of the subject-matter involved was this defi-
ciency, say $13,000 (though I think there was no
such deficiency), five per cent. upon which would be
$650; and, though the Code says the court may in its
discretion make a further allowance to any party, not
exceeding five per cent. upon the amount of the
recovery, or claim or subject-matter involved, in my
opinion, this statutory discretion is so limited, that no
more than five per cent. in all can be allowed. It is not
open to the construction, that in a case where thirty
different parties are litigating their claims to a fund or
some subject-matter, the court may award costs, and
then *further* costs to twenty of the parties, to the amount
of the whole claim or subject-matter, and charge them
upon such claims or subject-matter, and thus use up the
entire property in further *allowances, though [ * 387
nine-tenths of it may have belonged to the
other ten. It may be said, that the court would make
no such allowances, and this is probably so, but in my
opinion, the legislature has not given to any of our
courts such powers, discretionary or otherwise. In this
case, notwithstanding these suggestions, I think, we
should hold that the case is one of those specified in
§ 308, " an action for an adjudication upon a will."

It is certainly clear to my mind, that the allowances
made in this case are not warranted by any statute,
now or ever in force in this state, and it is not so claimed

by counsel. The position of counsel is, that, "irrespective of the provisions of any statute, it was the practice of the court of chancery, and is the rule of this court, in cases of this nature, to order the executors to pay such costs and counsel fees out of the estate, as a necessary expense incurred by them in its administration." I shall hereafter notice the cases cited in support of this position. In the mean time, I will further add, and endeavor to prove, that it is equally clear, that the court of chancery has no inherent jurisdiction to ordain and award costs, independent of statutory authority.

The books speak of costs between party and party, and of costs to be taxed as between solicitor and client. The court of chancery, in England, in exercising its discretion with regard to costs, from time to time, laid down general rules applicable to certain kinds of suits, as distinguished from others, and by these rules, all subsequent cases, coming within them, were governed. Under a decree, awarding costs, generally, these rules were resorted to, as establishing the items and amount of such costs, and such costs are the costs between party and party. These rules were general, and often, indeed, generally, fell short of affording to the successful party a full indemnity. In certain cases, these general rules were departed from, and an attempt made to approximate more nearly to an indemnity, and items were allowed, other than those specified by the general orders, such as the solicitor, &c., would have a right to obtain of his client, and such are said to be costs between solicitor and client. To authorize the taxation [* 388 ] of *the bill as between solicitor and client, requires a special direction in the order or decree of the court, and it was rarely intended, even in such a case, to afford a full indemnity. (Beames on Costs, Introduction, and p. 11.)

The practice of ordering the costs to be taxed, as between solicitor and client, is fully authorized in

England, under the act of Richard II., giving discretionary power to award "damages" (costs), without any restriction as to the amount to be paid by one party to another. But, in the absence of such authority, no such power exists. When the statutes contain the fee-bill, there can be no discretion as to the amount of the items specified. The court has no power to make the costs larger or smaller, when they are fixed by the statute, nor to add items for services not specified in the statute. Hence, in speaking of costs to be paid by one party to another, there is no such thing as costs taxed as between solicitor and client. This is so under the Code, for it declares, that, "when allowed, costs shall be as follows"—and the services, and the compensation for such services are there specified. (§ 307.) I am not speaking now of the statutory power to make *further* allowances, which is a new power given by the Code. The client may agree with his attorney, solicitor or counsel upon the compensation to be paid (§ 303); but this has no reference to costs in the cause. There are some cases in this state, in which costs have been directed to be taxed as between solicitor and client, and they will be noticed hereafter, in another connection.

As we have seen, the allowances in this case, *as costs,* beyond the taxable costs, cannot be sustained, upon any statute, or any notion of power in the court to allow extra costs, or costs of any kind, independent of statutory authority. Is there any other general principle of law upon which they, or any of them, can be sustained, in whole or in part? I think, there is. The principle to which I refer is, that persons acting *en autre droit,* as executors, administrators, trustees, guardians, receivers, &c., are, upon a faithful execution of their trusts, to be indemnified out of the trust property, for all expenses necessarily incurred in the faithful performance

*of their duties. (Williams on Executors 1137; *Stewart* v. *Hoare,* 2 Bro. C. C. 663; *Fearns* v. *Young,* 10 Ves. 184; *Attorney-General* v. *City of London,* 1 Id. 243; Lewin on Trusts, ed. 1858, p. 557; Beames on Costs, 13 *et seq.,* 157 *et seq.,* 214 *et seq.;* Tiff. and Bullard on Trusts, 697 *et seq.*)

It is a general rule, that a trustee shall have no allowance for his *trouble* and loss of time, and one of the reasons given is, that, on these pretences, if admitted, the trust estate might be loaded and rendered of little value, besides the great difficulty there would. be in settling and adjusting the *quantum* of such allowances, especially as one man's time may be more valuable than that of another. (Lewin on Trusts, and cases there cited.) Though a trustee is allowed nothing for his trouble, he is allowed everything for his *expenses out of pocket.* (Lewin on Trusts 557.) Lord ELDON, in *Worrall* v. *Harford* (8 Ves. 8), says, that "it is in the nature of the office of a trustee, whether expressed in the instrument or not, that the trust property shall reimburse him all the charges and expenses incurred in the execution of the trust." A trustee will be entitled to be reimbursed his necessary travelling expenses; fees properly paid to counsel; and when called to account by the *cestui que trust,* he will be allowed his necessary costs in former suits, in case they have not been occasioned by his own negligence, and will not be concluded by the previous taxation as between party and party. (Lewin on Trusts, 557 *et seq.,* and cases cited.) In short, the trustee, though allowed nothing for his trouble, is allowed everything for necessary expenses in executing the trust. His duties relate to the property and interests of others, and he is to be indemnified for *necessary* expenses in protecting such trust property, and has an equitable lien upon it for such expenses. This property is entirely independent of any statutes relating to costs. When the trustee is a party

to a suit concerning the trust property, there are taxable costs, and sometimes he is required to pay them to the other party to the action, they being taxed as between party and party, and they may, in a proper case, be chargeable *upon the trust fund; or, if costs are awarded to him, to be paid by the other party, [ * 390 to be taxed as between party and party, he may have allowances of expenses in addition, chargeable upon the fund; or the English court of chancery may award costs to be paid by the adverse party, as between solicitor and client, thus relieving the trust fund, wholly or partially, from any allowances to the trustee out of the trust fund.

But, as we have seen, there can be no such thing, in this state, as a taxation of costs as between solicitor and client, to be paid by one party to the other; as, here, the taxable costs are fixed and limited by statute, to which, in certain cases, further allowances may be added. Not so in the English Chancery; there, they are only regulated by general orders, adopted from time to time, which may be, and are in special cases, departed from. Hence, too, in England, the expenses of trustees in a suit are often spoken of as costs, and with propriety, under their law, giving full discretion as to the amount of "damages" (costs) to be awarded, and who shall pay; though in the English cases, the expenses and charges to which a trustee may be entitled, outside of the ordinary fee-bill, are designated as *allowances,* and are usually adjusted in the suit in which they occur, and are charged upon the trust fund in court, unless the adverse party is required to pay upon taxation as between solicitor and client, and which latter may not include all that the trustees may be entitled to.

Thus, in *Fearns* v. *Young*, Lord ELDON said: "When costs of a trustee are directed to be taxed, that means as between party and party, not in the larger way. But when a trustee, in the fair execution of his trust, has

expended money, reasonably and properly taking opinions, and procuring directions that are necessary for the due execution of the trust, he is entitled, not only to his costs, but also to his charges and expenses, under the head of just *allowances.*" And see also, *Stewart* v. *Hoare* (2 Bro. C. C. 663); *Camp* v. *Baker* (18 Ves. 285), charges of a sale, under the head of just allowances, not of costs; *Potts* v. *Leighton* (15 Ves. 276), the case of a receiver, and the difference between him and an executor as to special *allowances.*

\* 391 ]     \*The costs of legatees and *cestuis que trust* may be, and are, in proper cases, ordered to be paid out of the fund involved in the litigation. But this means the ordinary taxable costs, as between party and party, and I have found no case where such costs have been taxed as between client and solicitor, or where any special or extra allowance has been ordered. In *Fearns* v. *Young* (*supra*), the Chancellor, speaking of "just allowances," remarks: "With regard to an infant, this requires great consideration, as the infant himself cannot incur *charges and expenses;* if they cannot be claimed under just allowances, and the next friend is to be at the whole expense of the infant, beyond his costs, persons will deliberate before they accept that office."

Chancellor Walworth, in *Union Insurance Co.* v. *Van Rensselaer* (4 Paige 87): "If an extra allowance is made to guardians *ad litem* of the infants, it must be paid out of their share in the surplus, as nothing but the taxable costs can be charged upon that portion of the fund which belongs to other parties. And it must be a very special case, to justify the court in allowing extra counsel fees against an infant, in any event." Though, in England, the court has power, under the statute of Richard, to award damages according to discretion, and could, therefore, award a full indemnity to any party, and, in a proper case, make it chargeable upon the trust-fund in court, so firmly settled is the practice,

that no other allowance is made to any of the parties, beyond the ordinary fee-bill, except to trustees, executors, and others acting in a fiduciary capacity. I find no case, in this state, where extra costs and allowances have ever been given, independent of statute, to any party to the suit, unless he belonged to the class of persons entitled, upon general principles, to an indemnity. No case is cited by counsel, and I can find none, and if there is any such case that has escaped attention, it cannot be sound law. Nor is there any case in which costs to be paid by one party to another have been taxed as between client and party.

Counsel cites *Morrell* v. *Dickey* (1 Johns. Ch. 153). In this case, the widow and infant son of the testator filed the *bill against the defendant, as adminis- [ * 392 trator, for money in the hands of the latter. Though the decree was for the plaintiffs, the Chancellor said the defendant was not in default, and ought to receive costs out of the fund, and that this was the course of the court, in such cases, and it was decreed, that his costs be paid out of the widow's share. *Rogers* v. *Ross* (4 Johns. Ch. 608) is to the same effect, the Chancellor repeating the general rule, that executors or other trustees who have acted fairly, or who have resisted a claim in good faith, merely by way of submission, shall have their costs out of the fund. In *Grover* v. *Wakeman* (11 Wend. 226), another case cited, the bill was to set aside a voluntary assignment, and the court for the correction of errors ordered the costs of all the parties to be paid out of the funds in the hands of the assignees. There were no *allowances* in these cases; the costs were those given by statute between party and party.

In *Irving* v. *De Kay* (9 Paige 533), another case cited, the bill was filed by the executor to obtain a construction of the will, and the Chancellor says: "The costs of all parties thus far ought to be borne by the estate,

445

as the difficulties arising from the will itself have pro-
duced the litigation. And the costs of the executors
must be taxed, as between solicitor and client, so as to
cover their reasonable counsel fees, which they have
been obliged to pay, in discharge of their trust, to be
settled and *allowed* by the vice-chancellor, upon taxa-
tion"—citing Lewin on Trusts 456, where the rule is
stated that, if there be a fund under the control of the
court, but not otherwise, the trustee or executor will
have his costs as between solicitor and client. The
Chancellor here makes the proper distinction. The heirs
and next of kin were parties defendant, and the decree
gives them taxable costs according to the fee-bill, and
no more. But to the executors, it makes an additional
allowance, to cover reasonable counsel fees, which they
had been obliged to pay in the discharge of their trusts.
This allowance was not authorized by any statute giving
costs, but it was allowed under the general principle of
indemnity to trustees, executors, &c. The Chancellor
* 393 ] *speaks of them as costs, and there was no great
impropriety in doing so, as they were an expense
or damage incurred by the executors, and they are very
generally so designated in the English cases. The
explanation, however, immediately follows, and shows
that, "as to counsel fees," they were not the costs given
by statute, but such as were, in that case, *allowed.* This
case is an authority in point for the positions I have
been maintaining. *Smith* v. *Smith* (4 Paige 271) is
another case cited. It shows that a legatee plaintiff
may have costs, under some circumstances, out of the
estate; but these are the statutory costs.

It will be proper, in this connection, to say, that the
English law, that trustees are allowed nothing for their
trouble or services, has been, in a class of cases, changed
in this state, by statute. It required a statute to change
the law. The act of 1817 (ch. 251) made it lawful
for the court of chancery, in the settlement of the

446

accounts of guardians, executors and administrators, to make a reasonable allowance for their services, over and above their expenses; and when the rate of allowance was settled by the court, it was to be followed in all subsequent cases of settlement of such accounts. This statute came first under consideration upon an application for allowance to the committee of a lunatic; and Chancellor KENT decided, that the case was within the equity of the statute, and he granted certain allowances; and in October 1817, by a general rule, established such allowance as to guardians, executors and administrators. (*In re Roberts, a Lunatic,* 3 Johns. Ch. 43.) This is the origin of allowances to trustees, in this state, for services. The principle was carried into the revised statutes, as to executors, administrators and guardians, and the amount of allowance fixed. (2 R. S., p. 98; p. 153, § 51.) In *Meacham* v. *Sternes* (9 Paige 298), Chancellor WALWORTH extended the statute to assignees for the benefit of creditors.

Apply the law, as here ascertained, to this case, and it follows, that the award of *allowances* to the plaintiffs, other than taxable costs, for their necessary expenses in the execution *of their duties as executors or trustees, or both, was authorized by law, unless [ * 394 the Code, by providing for additional allowances, has restricted the power of the court in a case brought into the court "for an adjudication of a will." I do not think that it was intended to interfere with the common-law principle of indemnity to a faithful trustee or executor. The language is affirmative, and the percentage must be allowed to the plaintiffs, if costs are allowed."

The only question remaining, as to this item of $2500, is, whether it is reasonable. If the court had a discretion as to the amount, it was of necessity, a legal discretion. The court could only allow a sum paid or incurred by the plaintiffs for the services of counsel, as

necessary expenses in the execution of the trusts assumed by them. Its amount must be reasonable, or the trustees would, had they paid it, have been guilty of a breach of trust, and could not have such payment allowed, as against the legatees or *cestuis que trust*. It is not like the discretion of allowing or disallowing statutory costs. *I have no doubt, the judgment is reviewable in regard to these extra allowances.*

I am not satisfied with the amounts allowed. I think them unreasonable. When the case was first in the supreme court, $500 was allowed, and upon the second trial, this sum and $2500 in addition were allowed as counsel fees, reaching $3000 allowances beyond the taxable costs. The trial, aside from the arguments of counsel, could have occupied but little time, as but little evidence, other than documentary, was given. It may be conceded, that numerous difficult and interesting questions have arisen upon the will, and that the case was one eminently proper for a construction of the will, on account of all interested, and it may be stated, that the counsel for the plaintiffs have been most faithful in the discharge of their duties, and that they have brought to the consideration of the case great learning and ability. But, in my opinion, the plaintiffs, as executors and trustees, would not have been justified in paying $3000 counsel fees in this action to obtain the construction, &c., of the will. I think the sum should be reduced to $2000.

*395 ] *Four of the defendants were infants, and appeared and put in, by their guardian, the general answers, and submitted their several and respective interests to the protection of the court. The judgment awards to the guardian *ad litem* $250, in addition to his taxable costs. All the sums allowed are directed to be paid by the executors and trustees, half out of the realty or its funds, and the other half out of the personalty. According to *Union Insurance Co.* v.

*Van Renssellaer* (*supra*), if any extra allowances are to be made to the guardian of the infants, they must come out of the shares of the infants. But no allowance in this case should have been made, beyond the taxable costs. It does not appear, that the guardian *ad litem* was at any expense, or incurred any liability, or performed any services in the case, except putting in the general answers, nor was it necessary that he should. The rights of the infants were submitted to the protection of the court, and they were the same as those of the adult defendants, who have been represented all through the case by counsel. All the other extra allowances are illegal, and cannot be sustained. The court could only allow such costs as are specified in the statute, and the judgment as to all the allowances or extra costs, so called, except to the plaintiffs, must be reversed, and the amount to the plaintiffs must be reduced to $2000.

Ordered accordingly.