# CHARLESTON.

McNeer, Talbott & Johnson v. C. & O. Ry. Co.

Submitted September 28, 1915.  Decided October 19, 1915.

1. Carriers—*Duty to Furnish Cars.*

   A railroad company engaged as a common carrier, in the shipment of any particular class of articles or property, is bound to furnish suitable cars for such shipments, upon reasonable notice, whenever it can do so by the exercise of reasonable diligence and fairness and impartially to all of its patrons.  (p. 806).

2. Same—*Duty to Furnish Cars—Notice—Reasonable Time.*

   To be reasonable, such notice must allow sufficient time to enable the railroad company, by the exercise of reasonable diligence under the existing circumstances, to furnish cars without disturbance of applications previously made by other shippers at the same station, injustice to itself or unfairness to patrons other than the applicant.  (p. 806).

3. Same—*Authority of Station Agent—Contract With Shipper—Delivery of Cars.*

   The making of a special contract of shipment, as one to expedite delivery or furnish cars to a shipper on a particular day, is within the scope of the apparent authority of a station agent, and the shipper, in the absence of knowledge of a limitation or restriction upon such authority, may make a valid and binding contract with the company, through him, for the delivery of cars at his station, on a particular day, for the shipper's use.  (p. 805).

4. Contracts—*Oral Contract—Construction—Question for Court.*

   The interpretation of an oral contract the terms of which, as well as the attendant facts and circumstances, are clear and undisputed, is a question for the court.  (p. 808).

5. Same—*Construction—Language of Promisor.*

   The language of a promisor is always to be taken and understood in the sense in which he knew, or had reason to believe, the promisee understood it.  (p. 808).

6. Carriers—*Duty to Furnish Cars—Construction.*

   An application to a station agent for cars for a shipper's use on a particular day, made in the ordinary way, by one who has not been accustomed to take special contracts to furnish cars for particular dates, and without notice of intention or purpose to bind the company absolutely to furnish the cars on the day named, and the promise of the agent, in response to such application, to get the cars, do not prove a contract on the part of the railroad company, binding it absolutely to furnish them on the day named.  (p. 808).

7.  Tʀɪᴀʟ—*Demurrer to Evidence.*

    A decided preponderance of the evidence, in favor of the demurrant, on an issue of fact involved in the trial of a case, gives right to a finding in his favor, on such issue, as a matter of law.  (p. 809).

8.  Cᴀʀʀɪᴇʀs—*Demand for Cars—Sufficiency of Notice.*

    Three days notice of a demand for cars for a shipment of live stock, in a period of great activity in such shipments, is not reasonable nor sufficient.  (p. 810).

Error to Circuit Court, Monroe County.

Action by McNeer, Talbott & Johnson, partners, etc., against the Chesapeake & Ohio Railway Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and rendered.*

*Enslow, Fitzpatrick, Alderson & Baker,* for plaintiff in error.

*Jno. L. Rowan* and *T. N. Read,* for defendant in error.

Pᴏғғᴇɴʙᴀʀɢᴇʀ, Jᴜᴅɢᴇ:

This judgment for $250.00, as for damages for breach of a contract to furnish cars on a particular date for the shipment of lambs, rendered upon a demurrer to the evidence, is assailed upon several grounds, chief of which are failure of the plaintiffs to tender the lambs for shipment on or before the day fixed therefor by the alleged contract, failure of proof of a special contract, lack of authority in the agent of the defendant, to enter into such contract, and illegality of the contract, if made with authority from the defendant.

Contemplating the shipment from Fort Springs in Monroe County, to Baltimore and Jersey City, over the defendant's railroad, an interstate carrier, on the 10th day of September 1912, of two car loads of lambs which had been previously contracted for, the plaintiffs claim they applied to the defendant's agent at Fort Springs, on the 5th day of September 1912, for the cars they desired, two double-deck cars, and that he promised to have the cars at Fort Springs, on said 10th day of September.  Between the 5th and 10th days of the month, they gathered up from the farms of the surrounding

country, the lambs and combined them into one flock, at a farm owned by one Emerson Johnson and situated about a mile and a half from the railway station. Then, having ascertained that the cars had not arrived, they turned them into Johnson's pasture where they remained until September 14th, the date on which the cars arrived. In consequence of this delay, the lambs were sold in Baltimore and Jersey City, on September 17th, when the market was about 75c per hundred weight lower than it had been on the 14th, the day on which the cars would likely have arrived at their destination, if they had started on the 10th. As the defendant had not been advised of the purpose of the plaintiffs to avail themselves of a particular market, the court refused to allow them any damages for deprivation of the better market, incident to the delay, but, since the testimony showed the lambs had lost in weight, from five to eight pounds per head, by reason of the long separation from their dams, they being very young, ranging from three and one-half to five months in age, the plaintiffs were allowed to recover for the loss in weight, at seven and one-half cents per pound, the market price on the day of the sales in Baltimore and Jersey City.

If the plaintiffs had such a contract as they claim, actual production of the live stock at the station for shipment, on the day contemplated, was not essential to the maintenance of their right under it. Non-delivery of the cars for the shipment on the day mentioned is admitted. This fact having been ascertained by the plaintiffs, after they had consolidated their purchases of stock and brought the flock to a point within two miles of the station, actual delivery thereof into the cattle-pens at the station would have been not only useless, but also injurious to the interest of both parties. It sufficed that the plaintiffs were able and ready to claim the benefit of their contract, if they had one.

The making of a special contract of shipment, as one to expedite delivery or to furnish cars to a shipper on a particular day, is within the scope of a station agent's apparent authority, and a shipper, in the absence of knowledge of a limitation or restriction upon the agent's apparent authority, may make a valid and binding contract with the company, through him, for the delivery of cars at his station, on a

particular day, for the shipper's use. *Wood* v. *C. M. & St. P. Ry. Co.*, 68 Iowa 491; *Harrison* v. *Mo. Pacific Ry. Co.*, 74 Mo. 364; *Railway Co.* v. *Hume Bros.*, 87 Texas 211; *Easton* v. *Dudley*, 78 Texas 236; *Ayres* v. *Railway Co.*, 37 N. Y. 432; Elliot on Railroads, sec. 303; Hutchinson on Carriers, 2 ed. sec. 269, 3 ed. sec. 462.

In the absence of a special contract to furnish .cars on a particular date, a railroad company engaged as a common carrier in the shipment of any particular class of articles or property, is bound to furnish suitable cars for such shipment, upon reasonable notice, whenever it can do so by the exercise of reasonable diligence and without jeopardy to its business as such common carrier. *Ayres* v. *Ry. Co.*, cited; *Railway Co.* v. *Nicholson*, 61 Texas 491; *Railroad Co.* v. *Erickson*, 91 Ill. 613; *Ballentine* v. *Railroad Co.*, 40 Mo. 491; *Guinn* v. *Railway Co.*, 20 Mo. App. 453.

To be reasonable, notice for such purpose must allow sufficient time to enable the railway company, by the exercise of reasonable diligence, under the existing circumstances, to furnish the cars, without interference with orders previously given by other shippers at the same station, or jeopardy to its other business on other portions of its road. The company owes the same duty to all shippers at any one station as it does to shippers at other stations of the same standing and rank, and the rights of all shippers applying for cars, under the same circumstances, are necessarily equal. All the circumstances must be taken into consideration, and what is reasonable depends upon the facts of the particular case. *Ayres* v. *Railway Co.*, cited.

To sustain the allegation of a special contract, one of the plaintiffs testified that, on the 5th day of September, 1910, desiring to make shipments for markets of Friday or Saturday of the following week, he applied to the agent for cars for such shipments and that the agent replied as follows: "I will get them for you." He does not say the agent was advised of his purpose to avail himself of a certain market or of his intention to gather up unweaned lambs for shipment on a certain day. He states what his purpose and intent were, but not that he advised the agent as to them, and says he and his associates afterwards proceeded to gather up the

lambs. As to his conversation with the agent, he says he asked for two double-deck cars, to be furnished on the 10th day of September, and that the agent promised to get them, and adds: "And that was about all that was said in regard to getting cars."

If this evidence is sufficient to sustain an affirmation of a special contract, by the verdict of a jury, the trial court properly recognized its existence, and its action, in doing so, cannot be disturbed. On the other hand, if it would not sustain the verdict of a jury, the trial court's adjudication of the existence of such a contract is wrong. What the parties intended constitutes their contract, and their intention is to be ascertained from the language they used, read and considered in the light of their purposes, their situation and all of the attendant facts and circumstances. The purpose of the plaintiffs was to obtain cars for shipments on a certain date. It was the purpose of the defendant to make the shipments; but, whether the agent intended to obligate it to furnish the cars and make them on a particular day, at all hazards, is not so apparent. No previously existing custom or practice so to bind itself, which, if shown, might have been relied upon by the plaintiffs, has been proved. The contrary is virtually admitted by one of them. When asked if it was not quite customary not to have cars exactly on the date, he replied: "Yes, we often get disappointed." Aware of the general custom and practice of common carriers, namely, to afford shippers facilities upon notice and demand thereof, in a reasonable time, and also of the defendant's observance of this general rule in its previous dealings with the plaintiffs, one of their number applied for cars, in the usual manner, for a certain day, without a suggestion of intent to enter into a contract different in any respect, from those that had formerly been made for like or similar purposes, and the agent, without warning of any intention on their part to seek a different sort of a contract, replied, in what may very well be considered the usual terms, that he would get them, meaning nothing more than an assurance of an effort to do so by the customary method. Nothing in the conversation between the parties or in their conduct indicates intention to depart from the usual and ordinary rule of conduct operative between a shipper

and a carrier. In its general character and purpose, as well as the method of its procurement, the contract was not different from numerous others the plaintiffs, as traders in live stock and shippers thereof, had previously made with carriers, from time to time, throughout a period of several years.

The literally unqualified promise to obtain the cars means no more than the promisor actually intended. Words in a written contract are not to be interpreted without reference to their context. Nor are words used in a verbal contract to be wholly disconnected from the circumstances under which they were used, reflecting light upon the intention of the parties. In both classes of contracts, words are often denied effect according to their full literal import, in order to make them speak the real intention of the parties. "A particular or general custom or usage may be proven to vary the usual meaning of the language of the contract, or to import a term not expressed therein." 9 Cyc. 582. "Language used by one party to a contract, is to receive such construction, as he, at the time, supposed the other party would give to it, or such construction as the other party was fairly justified in giving to it, which is the same thing." *Gunnison* v. *Bancroft*, 11 Vt. 490; *Jordon* v. *Dyer*, 34 Vt. 104. The language of the promisor is always to be taken in the sense in which he had reason to believe the promisee understood it. *Chamberlain* v. *Railroad Co.*, 15 O. St. 225; *Tallcot* v. *Arnold*, 61 N. Y. 616; *Barlow* v. *Scott*, 24 N. Y. 40; *Evans* v. *McConnell*, 99 Iowa 326; 2 Kent Comm. p. 557; 9 Cyc. 578.

Though the intention and meaning of an oral agreement is more often a question for the jury than for the court, because, ordinarily, there is conflict in the testimony as to the terms of such a contract, the interpretation of one expressed in clear and undisputed terms is a question for the court and not for the jury. *Spragins* v. *White*, 108 N. C. 449; *Rhodes* v. *Chesson*, 44 N. C. 336; *Festerman* v. *Parker*, 10 Ire. 474; *Young* v. *Jeffreys*, 4 Div. & Bat. 216; *Brannock* v. *Elmore*, 144 Mo. 55; *Willard* v. *Gas Fixture Co.*, 47 Mo. App. 1. As stated by the plaintiff's witness, the contract is clear and free from ambiguity, and the facts and circumstances casting light on the meaning of the words used are uncontroverted. The defendant's agent contradicted this witness, but the ques-

tion of veracity between them would be one for the jury. The testimony for the plaintiffs' taken as true and interpreted by established rules, does not prove a special and absolute contract to furnish cars on a particular day.

Nor has a right of recovery been made out on the theory of a breach of the defendant's duty to furnish cars, upon application therefor and after reasonable notice. A very decided preponderance of the evidence shows application was made on September 7th, not the 5th. The defendant's record of applications for cars shows the plaintiffs ordered two single-deck cars on the 5th, loaded a double-deck car on the 7th and ordered two double-deck cars on the 7th, for delivery on the 10th. Speaking from their record, not from recollection, both the agent and his assistant positively assert the two double-deck cars were ordered on the 7th for the 10th. The assistant, testifying from his original record, says they ordered two single-deck cars on the 5th. The record produced was a leaf from a book, containing the original entries. On cross-examination, the witness says some of the papers he had did not show in whose name the two cars were ordered on the 5th. Immediately before this admission, he had said he had a batch of papers. Whether he meant that batch of papers did not show the names of the parties or that the leaf did not show it, is not quite clear; but, notwithstanding this admission, he proceeded to say he could show it from something, but did not complete the answer on account of an interruption. The chief clerk to the car-service agent gives facts tending to corroborate the testimony of the station agent's assistant. He says Fort Springs on the 6th advised that they had two double-deck cars on hand and needed four, one to load that day and three to load on the 12th. This advice was received on the 7th. On the 9th, Fort Springs advised that they had no double-deck cars on hand and needed four, two to load on the 10th and two on the 12th. If the plaintiffs gave their order on the 7th, a requisition was then made on the dispatcher's office at Hinton and then forwarded to the office of the general superintendent for transportation at Richmond, as well as to yard masters on the division, extending from Clifton Forge to Hinton. The 7th of September was Saturday and this order, if given on that day, might

not, in the ordinary course of business, have reached Richmond before the 9th, a Sunday intervening. But, if it had been given on the 5th, it would no doubt have been received at Richmond not later than the 7th. In the report sent on the 6th and received on the 7th, there was no demand for double-deck cars for use on the 10th. One was needed for the 6th and three for the 12th. Then, on the 9th, came the order for four, two for use on the 10th and two for use on the 12th. The original sheet from the office at Fort Springs was produced by the witness and exhibited to the jury. The testimony as to the state of the record in the office at Richmond is not supported by any original papers, but the testimony was not objected to for lack thereof. Though the plaintiffs did not make the memoranda and are not shown to have been present at the time of the making thereof, they are shown to have been made in the usual course of business and under circumstances inconsistent with any motive for fabrication thereof. That the plaintiffs ordered two single-deck cars, on the 5th, is a circumstance tending very strongly to show their witness is mistaken in saying the double-deck cars were ordered on that date. In his examination in chief, he said he had ordered two double-deck cars, on the 7th. To the testimony of the agents in rebuttal of this statement, showing contradictory facts and circumstances, he made no reply. Nobody was put on the stand to say they had not ordered two single-deck cars on the 5th. This amounts to a virtual admission that such an order was given and the fact is wholly inconsistent with the claim and evidence of the plaintiffs.

Upon this testimony, a jury would have been bound to find the order for the 10th was given on the 7th, and this would have been insufficient notice, as the evidence adduced by the defendant clearly shows. Every effort was made, to get the cars and the time required was just one week.

For the reasons stated, the judgment will be reversed and a judgment for the defendant rendered here.

*Reversed and rendered.*