### COPP et al. v. VAN HISE.
### No. 9702.

Circuit Court of Appeals, Ninth Circuit.
April 25, 1941.

GARRFCHT, Circuit Judge, dissenting.

Wm. J. Jameson and James H. Kilbourne, both of Billings, Mont., and Herschel G. Langdon, and Herrick, Sloan & Langdon, all of Des Moines, Iowa, for appellants.

Horace S. Davis, Rockwood Brown & Horace S. Davis, Melvin N. Hoiness, and Franklin S. Longan, all of Billings, Mont., for appellee.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This action was brought by the plaintiff against the defendants to recover for injuries received by the plaintiff when the automobile in which she was riding with the defendants skidded on a wet pavement and capsized. The verdict and judgment were for plaintiff in the sum of $4,150. Defendants appeal.

The principal question on this appeal is as to the degree of care the defendants were required to exercise in driving the car. The defendants claim that plaintiff was their guest and therefore under the so-called "guest law" of Montana (Rev.Codes of Montana 1935, §§ 1748.1, 1748.2, 1748.3) could not recover without showing gross negligence. She alleged in her complaint that the defendants were guilty of gross negligence on July 6, 1938 and the injuries she received resulted from such gross negligence. As to her legal relationship to the defendants she alleged that for the common purpose of viewing Yellowstone National Park and visiting friends at Roundup, Montana, plaintiff and defendants mutually agreed to travel together in the defendants' automobile, driven and under the sole control and direction of the defendants from Pierre, South Dakota, to Yellowstone Park, Wyoming, and return by way of Roundup and Billings, Montana. It is alleged that the cost of gasoline and oil for the said automobile throughout such trip, and of sustenance and similar charges, was to be apportioned between the plaintiff and the defendants, and the share of the plaintiff was to be paid to the said defendants by her in cash; that in pursuance of such agreement $10 was paid in cash.

The defendants by their answer admitted that they had mutually agreed with plaintiff that she should ride in their automobile under their sole control, and alleged that she was invited by them to make the trip as their guest and that such invitation was accepted. They denied there was any agreement that the cost of gasoline and oil for the automobile throughout the trip and of the sustenance and similar charges were to be apportioned in any way between the plaintiff and defendants; they denied that there was any agreement that plaintiff should make any cash payment or any payments of any kind to defendants as plaintiff's share of such expense; they admitted the plaintiff paid them $10 on July 5th, 1938, but allege the payment was made solely on the cost of plaintiff's own meals and sustenance on said trip.

The case was tried to a jury. The plaintiff testified that Mrs. Copp wrote to her from her home in Algona, Iowa, to plaintiff's home in Pierre, South Dakota, and told her they were planning to make a trip to Montana and to go through Yellowstone Park and back to Roundup, Montana, for a visit and invited her to go with them. She replied she was unable to do so. However, on July 2, 1938, the defendants came to the home of plaintiff in Pierre, and when again invited to go on the trip she said she would go. Nothing was said at that time between them in regard to sharing the expense of the trip and they started almost immediately, on the same day. They drove to Custer, South Dakota, that night and reached Cody, Wyoming, the next day. On July 4th they drove through Yellowstone Park and that night visited friends in Livingston, Montana. They discussed the question of the expense of the trip at Rapid City, South Dakota, the day they left Pierre. Mr. Copp had paid her meal check. Something was said about expenses at that time, and the next day, on two or three different occasions, as they were crossing Wyoming, plaintiff opened the discussion concerning expenses. She testified: "I would say we talked about it two or three times that afternoon, in the car, and at one time the Copps decided I would pay either two dollars or two dollars and a half, I

don't remember, and the next time the conversation came up they decided I would pay a dollar and a half a day." When asked if this was her "contribution per day for the trip" she replied "yes". When asked if this was the final arrangement with reference to contribution she said, "Well, we agreed definitely I was to pay a dollar and a half a day while we were on the trip, for expenses." She testified she made a payment to Mrs. Copp of $10 that night in her room in Cody. She was asked if there was any discussion as to any segregation of expenses and replied, "No, we just put it all under one heading 'expense'—we didn't specify 'breakfast' or 'lunch' or 'dinner' or 'lodging'—we just called it 'expense'.

"Q. Did you specify anything about the maintenance of the car—gasoline, or oil, or matters of that kind?

"A. No, there was nothing said. We discussed this very briefly and just called it 'expenses'."

On cross examination plaintiff testified that nothing was said about the payment of any expenses of the trip either in the letter inviting her to take the trip or in the early invitation given to her at her home at Pierre on the second of July and nothing was said about it before they started on the trip. The matter was first discussed when Mr. Copp paid for her dinner. She testified: "Well, I don't remember the exact words, but when Mr. Copp paid for my dinner that evening I said something about the expense—that, of course, I didn't want him to pay for my expenses—but there was very little said, because by that time he had paid the bill and we had started out through the door and we were on the street and in the car." She testified that all that was said that evening was that she didn't want him to pay her expenses; that the next morning Mr. Copp paid for lodging and for breakfast for her; that he paid for meals and lodging at Cody; that he paid for meals at Yellowstone Park. She further testified that Mr. Copp paid for her meals and lodging during the entire trip and up to the time of the accident. She testified further in regard to the conversation that in the first discussion with Mrs. Copp it was suggested that she pay $2 or $2.50 a day and "the third time we talked about it Mr.

Copp seemed to think that was a little too much so he said a dollar and a half a day would be enough." She repeated that nothing specific was said about meals and lodging, "we just discussed the thing as expenses," but that it was her understanding that her meals and lodging would be paid by Mr. Copp out of the $1.50 a day.

Then she was asked: "Nothing was said about any other expense?

"A. No—well, we didn't—I don't believe we even mentioned meals and lodging. We just discussed this very briefly as my share of expenses."

Mrs. Copp testified that a day or two before they started on the trip she wrote the plaintiff a postal card stating: "You couldn't go through the Park cheaper. Cost you your eats"; that nothing further was said on that subject that she remembered, and she testified there was no discussion between her or her husband and the plaintiff with reference to the payment of any of the expense of operating the car on the trip.

The defendant, L. A. Copp, testified he had no discussion whatever with plaintiff in regard to payment of expense of the trip; that he did not know of any payment being made by Mrs. Van Hise. The first he knew of the payment to his wife was when he read the complaint in this action.

It will be observed that both the plaintiff and Mrs. Copp testified that nothing was said between them as to the cost of gas and oil and no specific agreement made with relation thereto. The plaintiff testified also that nothing was said about meals and lodging but that she understood that the $1.50 a day she was to pay covered her meals and lodging. Mrs. Copp testified that her letter specifically referred to the cost of "eats" only, and this is not denied by the plaintiff.

The defendants requested two instructions to the jury upon the theory that the plaintiff was at the time of the accident riding in defendants' automobile as a guest and that she could not recover for the damages suffered by her unless they were caused by the "grossly negligent and reckless operation of the automobile" and that she could not recover for ordinary negligence.[1] These instructions were rejected

---

[1] "Defendants' Special Request No. 2. You are instructed that under the evidence in this case the plaintiff was riding in defendants' automobile as a guest. Unless you find from a preponderance of the evidence that the injuries sustained by the plaintiff were caused directly and proximately by the grossly negligent and reckless operation of the automobile by the defendant L. A. Copp, the plaintiff

and defendants excepted to their refusal. The court instructed the jury that if plaintiff was travelling with defendants "sharing expense" or, if there was an agreement that she would "share the expense", defendants must use ordinary care for her safe carriage.

The court did not distinguish between the expense of plaintiff's sustenance and expense of operating the car. Consequently, the jury would be required to hold that if the plaintiff paid any part of the expense of her own sustenance on the trip the defendants would be liable for their ordinary negligence.

The court further gave an instruction [2] in which the phrase "carelessly negligent" was used where, to be consistent with the other instructions, the phrase should have been "grossly negligent". [3]

It was conceded on the argument that this instruction was erroneous but the plaintiff, while admitting that she is bound by the record, stated that in truth and in fact the word "grossly" was used by the court instead of "carelessly" and that the record in that respect is erroneous but she does not ask to have it corrected and relies upon the failure of the defendants to effectively challenge the instruction.

The defendants moved for a directed verdict which was denied, to which an exception was allowed and, after the verdict had been returned, the defendants moved for a new trial or for a judgment notwithstanding the verdict. This motion was denied.

It may be assumed for the purposes of this appeal that the plaintiff is correct in her contention that under the law of Montana if there was an agreement for invitee to pay a portion of the expense of the operation of the automobile, such as the payment of a part of the cost of the gas and oil, the invitee is no longer a guest within the meaning of the statute. In support of this no decision of the Montana courts is cited and the appellee relies upon the decision of the Court of Appeals of New York involving an interpretation of the guest law of Montana. Smith v. Clute, 277 N.Y. 407, 14 N.E.2d 455. In the light of this assumption we will take up the alleged errors in the rejection by the court of the defendants' proposed instructions No. 2 and No. 5.

If, as a matter of law, the plaintiff was a guest in the defendants' automobile instruction No. 2 as to the degree of care due to a guest should have been given and its refusal was error. We conclude that the plaintiff under her own evidence was a guest. The evidence shows that at the inception of the trip there was no agreement between the parties for the payment by the plaintiff of any of the expenses of operating the automobile. Either there

---

cannot recover, and your verdict must be for the defendants."

"Defendants' Special Request No. 5. It is not sufficient for the plaintiff to prove that the defendant L. A. Copp was guilty of ordinary negligence, but the plaintiff must go further and show that he operated his automobile in a grossly negligent and reckless manner. The mere fact that an accident occurred and that the plaintiff received injuries raises no presumption of such gross negligence and reckless operation."

[2] "You are instructed that the duty of the defendants to the plaintiff in the circumstances of this case, as disclosed by the evidence, was that they must use slight care and diligence for her safe carriage as a guest, if you so find that the plaintiff was riding with the defendants as a guest and not as a joint adventurer.

"In connection with the phrase 'joint adventurer', that means was she going along, that is, as it applies to this particular case, with the defendants, sharing the expense; or was that the understanding and agreement between them,

that she was going to share the expense. That is the connection in which that phrase would be used here.

"The duty of the defendants to the plaintiff, in the circumstances of this case, as disclosed by the evidence, was that they must use ordinary care for her safe carriage as a joint adventurer, if you so find that the plaintiff was a joint adventurer, and not a guest."

[3] "You are instructed that the primary duty of caring for the safety of a vehicle and those riding in it, rests upon the driver, and if you believe from all of the evidence in this case that the defendant L. A. Copp violated his duty in a *carelessly negligent manner* which proximately caused the plaintiff's injuries, then the verdict should be for her and against the defendants. So, too, if you find the defendant L. A. Copp guilty of ordinary negligence in this particular, which was the proximate cause of her injuries, and that the plaintiff and defendants were joint adventurers, your verdict must also be for the plaintiff and against the defendant." (Italics ours.)

was no agreement other than the invitation given and accepted or the agreement was the one implied from the acceptance of the invitation to ride at the cost of her food only. Under this evidence at the time the trip was begun she was clearly a guest within the meaning of the Montana law. If that relationship was changed by subsequent agreement between them the burden would be upon the plaintiff to show the change. The most that can be said of plaintiff's testimony is that there was a subsequent agreement to pay expenses. Plaintiff does not testify that these expenses were defined in any way other than by stating her clear understanding that her cost of board and lodging would be paid from the $1.50 per day which she agreed to pay. No testimony was given as to the actual cost of the meals and lodging paid by Mr. Copp on behalf of the plaintiff but in the absence of showing to the contrary there is no reason to conclude that any part of the $1.50 was to be applied to the cost of gas and oil or that there would be any overplus to be so applied.

■■ The general rule is that the construction of a contract is a question of law for the court, if the terms of the contract and the extrinsic facts which may affect its construction are free from dispute, and this is true no matter how ambiguous or uncertain are its terms; but when its terms and the circumstances surrounding the making of the contract are in dispute, the question of the meaning of the contract may be submitted to the jury with alternative instructions based on the conflicting possibilities of the evidence. O'Connor v. West Sacramento Co., 189 Cal. 7, 207 P. 527; Douglass v. Paine, 141 Mich. 485, 104 N.W. 781; McNeer, Talbott & Johnson v. C. & O. Ry. Co., 76 W.Va. 803, 86 S.E. 887; Hammond Coal Co. v. Lewis, 248 Mass. 499, 143 N.E. 309; Barnard v. Kellogg, 77 U.S. 383, 10 Wall. 383, 19 L.Ed. 987. In the case at bar the general rule must prevail; for there is no question as to the terms of the contract to which the plaintiff testified, or as to the circumstances under which it was made. It is clear, as a matter of law, that, accepting this testimony of plaintiff as undisputed, it does not evidence an agreement sufficient to alter the guest status established by her acceptance of the defendants' invitation to take the pleasure trip in question. It was therefore error to refuse the instruction No. 2 requested by defendants and to instruct the

jury that a mere agreement to pay a part of the "expense" was sufficient to charge the defendants with the exercise of ordinary care for the safety of the plaintiff. This conclusion requires a reversal of the judgment.

■ Appellee claims that even if the defendants' instructions were erroneously rejected and even if the instructions given were erroneous the record clearly establishes defendants' gross negligence as a matter of law and therefore the judgment should be sustained notwithstanding the instruction of the court that it was unnecessary for plaintiff to prove more than ordinary negligence. The question of whether or not there was gross or ordinary negligence is clearly a question of fact and the appellee recognizes this but claims as a matter of statutory law in Montana that the deliberate violation of the state statute in regard to the operation of automobiles upon the highway which results in an injury or death is gross negligence and also that if there are two violations of the law simultaneously the statute provides that such violation of law constitutes gross negligence. Rev.Codes of Mont.1935, § 1741.7, subd. (6), as amended 1937, c. 182, § 5.

■ However, the appellee concedes that if the testimony of the defendants was believed by the jury they were guilty of no negligence whatever, but contends that the jury evidently believed the plaintiff and her witnesses and disbelieved the testimony offered on the part of defendants and consequently, asks us to act on the theory that the testimony of the plaintiff's witnesses is true and that of the defendants' witnesses is untrue. The question of credibility of witnesses is one for the jury. We cannot act upon factual inferences arising from a general verdict.

■ The questions of the alleged gross negligence of the defendants and of the contributory negligence of the plaintiff were for the jury. The court properly denied the motion of the defendants for directed verdict.

Judgment reversed.

GARRECHT, Circuit Judge (dissenting).

It seems to me error to hold as a matter of law that the plaintiff was a guest. The evidence on this question was conflicting,

and the issue was properly submitted to the jury for determination.

As to the question of gross negligence, the testimony of plaintiff imports gross negligence, nothing less. The evidence of defendants was to the effect that there was no negligence. Logically, therefore, the finding of the jury conclusively established gross negligence.

The court was not required to give the instructions requested by defendant, since the instructions given by the court fairly and adequately covered the various issues.

The judgment should be affirmed.