# Wytheville.

## LYNNHAVEN BEACH AND PARK COMPANY, INC. v. JOSEPH F. MOORE, ET ALS.

June 18, 1931.

Present, Campbell, Holt, Epes, Hudgins, and Browning, JJ.

The opinion states the case.

*H. B. G. Galt* and *R. W. Shultice,* for the plaintiff in error.

*Rixey & Rixey,* for the defendants in error.

BROWNING, J., delivered the opinion of the court.

This case is before us on a writ of error allowed to the judgment of the Court of Law and Chancery of the city of Norfolk, by which the verdict of the jury was sustained, giving damages in favor of the defendants in error in the sum of $8,000.00, with certain interest on parts thereof.

The plaintiff in error was the defendant and the defendants in error were the plaintiffs in the trial court and as such they will hereafter be referred to.

The plaintiffs purchased from the defendant three lots located in Princess Anne county, Virginia, on the eighth of March, 1926, which transaction was consummated by the execution by the parties of three separate contracts, one each per-

taining to the sale and purchase of each lot. The contracts are precisely similar, except that there was a difference in price of one of the lots from the other two.

We quote one of the contracts in full:

"Ex. 1.—Bond No. 70.

"Lot No. 5                                                          Block 'F'

"Section—Lynnhaven Beach & Park Co.

"Notice—To Purchasers: No representations or agreements shall be binding on the Company, except those contained in the within writing.

"Bond for a Deed

"Lynnhaven Beach and Park Co.

"To

"John S. Rixey, Essex Bldg., Norfolk, Va.
"Main Office: 702 Royster Building, Norfolk, Va.

"Price of lot................................$2,500.00
"Cash paid ..................................   250.00
"Balance due as per bond.....................  2,250.00

"Ex. 1.

"No. 70.

"Bond for a Deed.

"This Agreement entered into this the eighth day of March, in the year 1926, between Lynnhaven Beach & Park Co., Inc., a corporation, with its principal office in the city of Norfolk, Virginia, party of the first part, and John S. Rixey of Norfolk, Va., whose postoffice address is Essex Bldg., party of the second part:

"Witnesseth, that for and in consideration of the sums of money hereinafter mentioned, the party of the first part agrees to sell to the party of the second part and the party of the second part agrees to buy from the party of the first part one lot

of land at 'Cape Henry,' in the county of Princess Anne, Virginia, being lot ..... known as lot number 5, in block number F, section ........, on the plat of Lynnhaven Beach & Park Co., Inc., duly recorded in the clerk's office of the Circuit Court of Princess Anne county, in Map 5, page 71.

"The party of the first part agrees to deliver to the party of the second part a warranty deed duly signed, sealed and acknowledged, whenever the part.... of the second part shall have paid one-half of the purchase price of twenty-five hundred & no/100 dollars *with interest on deferred payments from the date hereof at six per cent per annum in full* to the party of the first part (or its duly authorized agent), and until said $2,500.00 has been paid, the party of the second part agrees to pay two hundred and fifty & no/100 dollars cash and balance of one-fourth purchase price May 8, 1926, and balance in semi-annual payments of four hundred and sixty-eight & 75/100 dollars beginning on the 8th day of November, 1926, and continuing until the said amount of $2,500.00 *of the purchase price* is paid; time being the essence of this contract.

"At such time as one-half of the purchase price above named has become due and payable, or at any time thereafter, the Lynnhaven Beach & Park Co., Inc., may require purchaser to take a good and sufficient deed of bargain and sale for the above described property and to execute a deed of trust securing notes for the balance of said purchase price as a first lien upon said property. The purchaser to pay for the drawing, executing and recording of said deed and a release deed if required.

"The party of the second part agree, in case of change in his residence, to give the party of the first part, at its main office, prompt notice thereof in writing, and that until such notice, in writing, shall have been actually received by the party of the first part, at its main office, notice to the part.... of the second part sent by mail to him at his former address shall be deemed sufficient notice; and in default of such notice by the party....

of the second part being received by the party of the first part, or in default in the payment of any one of such aforesaid payments for two months after the same has become due and payable in accordance with the terms hereof, this agreement shall become null and void at the option of the party of the first part, and all payments made hereon shall be considered as payments for an option for the time being, and shall be held by the party of the first part free from all claims and demands of whatsoever kind by the part.... of the second part.

"The purchase of the above mentioned property is made with the following covenants and restrictions:

"1st. The land is not to be sold, rented or otherwise disposed of to any negro or persons of African descent.

"2nd. That no liquor or ardent spirits are to be sold upon the land herein described for twenty-one years.

"3rd. That the layout of the lots as shown on the plan of the Lynnhaven Beach & Park Co., Inc., shall be adhered to, and no scheme of facing lots in any other direction shall be permitted.

"4th. That no use shall be made of the land hereby sold, or any part thereof, that will constitute a nuisance or injure the value of any neighboring lots.

"5th. That no building shall be erected on the land nearer than fifteen feet from the sidewalk.

"6th. That the purchaser will conform to such rules and regulations for sewerage, paving and police as may be adopted by the Lynnhaven Beach & Park Co., Inc., its successors or assigns; and pay as an assessment charged against this property a pro rata share of public improvements to abutting property in the streets.

"7th. That the Lynnhaven Beach & Park Co., Inc., reserves unto itself all riparian rights, the title and use of all unplatted plots, the fee in all streets of said property, to use the same for railroad, gas, water and sewer pipes, electric light, telephone

and telegraph poles and wires, and for such other reasonable uses as the said company may see fit.

"8th. That all taxes on the land purchased shall be paid by the Lynnhaven Beach & Park Co., Inc., until the deed is due under this contract.

"9th. The party of the second part shall have the right to anticipate any or all payments herein mentioned 'at any time and receive a deed for said land free from all encumbrances, subject, however, to the reservations and restrictions herein named.

"10th. The Lynnhaven Beach & Park Co., Inc., agrees to construct granolithic sidewalks on Third and Sixth streets, and will construct a concrete roadway through Atlantic avenue in extension of concrete boulevard from First westwardly when all abutting lots have been sold and paid for.

"It is expressly agreed between the parties hereto that one or all of the above covenants and restrictions may be waived, as to any property which may be sold for business purposes.

"Witness the following signatures in duplicate:

"LYNNHAVEN BEACH & PARK CO.,
"By JOHN COLE,
"Secretary & Treas.

"JOHN S. RIXEY.

"Received on the within, as receipt for below.

| Date | Amount | Signature |
| --- | --- | --- |
| "May 7th, 26 | $375.00 | John Cole |
| "Nov. 8th, 26 | 468.75 | John Cole per F. |
| "May 10th, 27 | 468.75 | John Cole per F. |
| "11/7/27 | 468.75 | John Cole |
| "May 9th, 28 | 468.75 | John Cole F." |

(Italics ours)

Payments were made by the plaintiffs on the dates specified in the contracts until they had paid the principal sums in full. Before the due dates of such payments, the plaintiffs were notified by the defendant of such payment becoming due, but such notifications were silent as to the payment of any interest thereon until on the fifth day of May, 1928, the defendant, by letter, notified the plaintiffs, a few days before the last payments were due, that such payments, *with interest on the purchase price of the lots,* would be due on the specific dates. (Italics ours.) A few days thereafter the plaintiffs asked the defendant for a deed to the lots, and expressed surprise that any interest money was claimed. The defendant insisted that, in accordance with the terms of the contracts, interest was a legitimate demand, and it declined to deliver deeds until it was paid. The plaintiffs refused to pay the interest, alleging that the terms of the contracts did not obligate them to do so, and that it was not the intention of the parties that it should be paid, and they charged the defendant, by letter, with breaching the contract, and demanded that the money paid by them be paid back with interest thereon. Upon the defendant's non-compliance with this demand, an action at law was instituted by the plaintiffs against the defendant for the recovery of the amount claimed. To the plaintiffs' declaration in the action of trespass on the case in assumpsit, the defendant plead the general issue and filed its plea of set-off and account, which latter was later withdrawn, so that the single issue of the plaintiffs' claim was presented to the jury.

The case was heard on August 13, 1929, upon the record and the testimony of witnesses and exhibits, and the jury returned a verdict in favor of the plaintiffs for $8,000.00, with interest on the divers payments from their dates.

The defendant assigns as error the action of the court in refusing certain instructions asked for by it and in granting the instructions asked for by the plaintiffs and in overruling its motion to set aside the verdict as contrary to the law and the

evidence and the failure of the court to construe the contracts which, it alleged, were plain and unambiguous, but leaving such construction to the jury.

It will here be noted that the possession of the lots remained with the defendant. None of the parties exercised their rights under the contracts seeking a change in the possession of the property.

This brings us to a consideration of the interpretation and construction of the contracts in question, which is the crux of the whole situation. This is governed by legal rules and is, of course, within the exclusive province of the court.

It will be noticed that the second paragraph of the contract employs, in part, this language: "The party of the first part agrees to sell and the party of the second part agrees to buy." The effect of the use of such language in the present connection has been the subject of adjudication by the Supreme Court of Massachusetts in the case of *Martin* v. *Adams,* 104 Mass. 262, in which it was said: " 'Agree to sell,' as used in a written contract for the sale of property, which states that the other party *agrees to purchase* the property, and specifies the time for the payment of the price, construed to import an agreement for a present sale and not an offer to sell in the future." (Italics ours.) So we start out with an actual sale of the property to the plaintiffs.

The next and third paragraph, which consists of one sentence, deals alone with the delivery of a deed and the amount of the purchase price and its mode of payment. It is urged upon us that there is no obligation upon the plaintiffs to pay any interest unless one of the parties, either having the right to do so, exercises the option to cause the delivery of a deed and pass the possession of the property.

The language of this portion of the paragraph is this: "The party of the first part agrees to deliver to the party of the second part a warranty deed duly signed, sealed and acknowledged whenever the party of the second part shall have paid

one-half of the purchase price of twenty-five hundred and no/100 dollars *with interest on deferred payments from the date hereof* at six per cent per annum *in full* to the party of the first part * * *" (Italics ours.) These are unequivocal, unambiguous terms. It is language of readily understandable import. The defendant tells the plaintiffs that it will deliver them a deed to the property which they have bought whenever they shall have paid one-half of the purchase price, with interest on the deferred payments in full from the immediate date. The words do not say, nor do they signify, that in the event the deed is not delivered, by the happening of the condition imposed, that the plaintiffs will be absolved from the obligation to pay interest. The consideration for the delivery of the deed at the particular time was the payment of one-half of the purchase price with interest *in full* to that time from the immediate date, which was also one-half of the consideration for the purchase of the property. That this is the fair notion of the intendment of the parties, in the light of the language used, is made clearer by the portion of the sentence instantly following that last quoted: "* * * and until said $2,500.00 has been paid ($2,500.00 being the purchase price), the party of the second part agrees to pay two hundred and fifty and no/100 dollars cash, and balance of one-fourth purchase price May 18, 1926, and balance in semi-annual payments of four hundred and sixty-eight and 75/100 dollars beginning on the 8th day of November, 1926, and continuing semi-annual until the said amount of twenty-five hundred dollars of the purchase price is paid; time being of the essence of this contract." (Parenthesis words ours.)

██ Now it will be noticed that the deferred payments specified in the portion of the sentence just quoted are the same deferred payments, up to one-half of the purchase price, upon which the plaintiffs would be required to pay the interest *in full*, upon the delivery of the deed, at which time in accordance with the next paragraph of the contract they would be required to execute a deed of trust on the lots to secure the unpaid bal-

ance of the purchase price. We think there is nothing in the language of this third paragraph, nor indeed, the language of the whole contract, which must be construed as an entirety, which negatives the idea of the obligation upon the part of the plaintiffs to pay interest on the deferred purchase money. If the contrary had been the intention of the parties, it was perfectly easy of accomplishment by the employment of apt and ready words for the purpose.

But counsel for the plaintiffs stress the fact that the defendant has been in possession of the property during the period of the payments. We are not advised that the possession of subdivision lots is a matter of much moment unless it is desired for the purpose of building, in which circumstance it could have been acquired under the condition of the contracts already adverted to, or, indeed, at any time by the anticipation of any or all of the deferred payments. To hold that the plaintiffs are not obligated to pay to the defendant interest on the deferred payments would be to render meaningless and of no effect the plain and patent language of the contract.

The contract is not an ideal structure. It is cumbersome and inartificial. We cannot say, however, that a court is unable to discover its meaning. One of the parties is a skilled and able lawyer, and we strongly suspect that the form contract, partly in ink and partly printed, was not carefully read before it was executed. It is an old saying that the lawyer is careful of all business committed to him except his own.

In the letter of May 23, 1928, of one of the plaintiffs to the defendant, which is marked "Exhibit 11," the writer says: "* * * I have made my payments on time and did not think there was any interest due. However, if interest is due under the contract, I will, of course, have to pay it. I do not have the contract before me, but, if the contract does call for interest, I will be ready to pay the same upon presentation of the proper deeds. * * *"

The witness, John Cole, secretary and treasurer of the defendant company, testified, in part, as follows:

"Q. Did he (meaning Mr. Rixey, one of the plaintiffs) request any delay in finally closing the matter?

"A. Well, at the time that I took him the deed, he said: 'Well, the next payment won't be due until November 8, 1928.'

"Q. That was after he had paid the two $2,500.00 amounts and the $3,000.00?

"A. That was after he had paid everything that is receipted for in the contracts."

And later, on cross-examination by Mr. John S. Rixey, the same witness testified:

"Q. You made the statement a few minutes ago that I told you that the next payment would not be due until November?

"A. Yes, sir.

"Q. That is what I understood you to say that I said the next payment after I made my final payment would not be due until the eighth of November?

"A. Yes, sir.

"Q. Did I admit that I did owe you interest?

"A. No, you did not.

"Q. And what you meant by saying that, was you quoted me to the effect that if any interest was due it would not be due until the next November?

"A. Yes, sir.

"Q. But that I denied that I owed any interest?

"A. No, you did not deny that you did not owe interest, but you said you didn't know whether you did owe interest or not."

Mr. Rixey, however, testified that the first intimation that he had of any claim for interest was contained in the letter of May 5, 1928, three days before he made the final payment.

There were only two witnesses, one for each side of the controversy, and there is little conflict as to facts between them. One gives the version of the plaintiffs and the other that of the defendant. Their testimony furnishes us little aid in the determination of the matter.

In the case of *Phoenix Ins. Co.* v. *Shulman,* 125 Va. 281,

at page 290, 99 S. E. 602, 605, this court, through Judge Sims, said: "It is true that an insurance contract, like any other contract, must be construed in accordance with its terms. Its plain meaning must be given effect. Courts cannot make contracts for parties. But all of the provisions of the contract will be construed together, and seemingly conflicting provisions will be harmonized, when this can be reasonably done so as to effectuate the intention of the parties as expressed in the contract."

In the case of *Stonega Coal Co.* v. *L. & N. R. Co.*, 106 Va. 223, at page 226, 55 S. E. 551, 552, 9 L. R. A. (N. S.) 1184, Judge Buchanan, speaking for the court, said: "While the court, in construing a contract, may take into view the circumstances under which it was made, yet when a breach of it is averred its language must determine to what the parties to it bound themselves. Courts are not authorized to make contracts for them or to add any stipulation which they have not seen proper to insert."

In 2 Williston on Contracts, section 810, part 2, it is said: "* * * and it may be said without qualification that if the parties have made a memorial of their bargain, or *a writing is required by law,* their actual intent, unless expressed in some way in the writing, is ineffective, except when it can be made the basis for reformation of the writing. It is true that it is commonly said that the court in the interpretation of contract is endeavoring to find the intention of the parties. The natural meaning of this language is that the court is endeavoring to find as a controlling factor what, as has just been seen, may be wholly ineffectual. In contracts of which no memorial is made, and *no writing required by law,* it is doubtless true that where parties have made a bargain, which both of them understand in a certain sense, their intent (which at least has been made plain to one another) must be sought, however inadequately it may have been expressed. But in contracts of the other class, this is not true, and although courts may say they are seeking the intention of the parties, the assertion is

even more emphatic that this intention can be found only in the expressions of the parties in the writing. In effect, therefore, it is not the real intent, but the intent expressed or apparent in the writing, which is sought."

See to the same effect note Ann. Cas. 1914D, p. 392; *McNeer* v. *C. & O. Ry. Co.*, 76 W. Va. 803, 86 S. E. 887; *Stonega Coal & Coke Co.* v. *L. & N. R. R. Co.*, 106 Va. 223, at pp. 226-7, 55 S. E. 551, 9 L. R. A. (N. S.) 1184. Citations of other authorities to the like effect might be multiplied indefinitely.

The above was cited by this court in the case of *Richmond Eng. Corp.* v. *Loth,* 135 Va. 110, at page 142, 115 S. E. 774.

"Thus, in a case of doubtful construction, it is permissible to place the expositor in the shoes of the parties to a bilateral contract to ascertain the meaning of the words used, but not to contradict their plain meaning." *Coal River Collieries* v. *Eureka Coal Co.,* 144 Va. 281, 132 S. E. 337, 343, 46 A. L. R. 485.

■ In the light of what we have said, we deem it unnecessary to make specific mention of the instructions of the court, or to those refused by the court, which have been made the subject of assignments of error. It is enough to say that in our opinion the failure of the court to construe the contracts by appropriate instructions was error.

It is our opinion that there can be but one answer to the question presented by this record, and that is that the contracts are reasonably clear and certain, to the effect that the plaintiffs were to pay to the defendant interest on the deferred payments of the purchase money from the date of the contracts, to be arrived at by the partial payment system of computation.

For the reasons stated, the judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded, with direction to the trial court to enter judgment for the defendant.

*Reversed and remanded.*